UNITED STATES DISTRICT COURT
WESTERN DISTRICT OF WASHINGTON
AT SEATTLE

| | |
|---|---|
| AMAZON.COM, INC., et al., | CASE NO. C23-0747JLR |
| Plaintiffs, | CONSOL. CASE NO. C23-0748JLR |
| v. | ORDER |
| DIANA CHALOVA, et al., | |
| Defendants. | |

## I.      INTRODUCTION

Before the court is Plaintiffs Amazon.com, Inc., Amazon.com Services LLC (together, "Amazon"), and YETI Coolers, LLC's ("YETI", and with Amazon, "Plaintiffs") *ex parte* motion for alternative service of process of their first amended complaint.  (Mot. (Dkt. # 16); *see* Am. Compl. (Dkt. # 11).)  Plaintiffs seek leave to serve Defendants Diana Chalova, doing business as Fine Time Beauty, and Viktoriia Daniuk, doing business as Minago (together, "Defendants") using email addresses associated with their Amazon selling accounts and Payoneer, Inc. ("Payoneer") virtual payment service

provider accounts.  (*See generally* Mot.)  Neither Defendant has appeared in this action

and neither has filed a response to the motion.  (*See generally* Dkt.)  Being fully advised,

the court GRANTS Plaintiffs' *ex parte* motion for alternative service of process.

## II.  BACKGROUND

This action arises from Defendants' alleged sale of counterfeit YETI-branded

drinkware on Amazon.com. (Am. Compl. ¶ 4 (describing the YETI Trademarks); *id.*

¶¶ 39-46 (describing Defendants' alleged roles in advertising, marketing, offering,

distributing, and selling those products).)

Plaintiffs originally sued Defendants' Amazon selling accounts, Fine Time Beauty

and Minago, in separate lawsuits.  (*See* Compl. (Dkt. # 1) (suing Fine Time Beauty));

Compl., *Amazon.com v. Minago*, No. C23-0748JLR (W.D. Wash. May 22, 2023), Dkt.

# 1 (suing Minago).[1]  As part of their investigation into the selling accounts, Plaintiffs

obtained information from Payoneer regarding the bank accounts linked to those selling

accounts.  (Commerson Decl. (Dkt. # 18) ¶¶ 2-4; Haskel Decl. (Dkt. # 17) ¶ 6.)  Through

this investigation, Plaintiffs confirmed that Ms. Chalova was the owner of the Payoneer

account that received funds from the Fine Time Beauty selling account; Ms. Daniuk was

the owner of the Payoneer account that received funds from the Minago selling account;

and that Defendants accessed their Payoneer accounts using IP addresses located in

Ukraine.  (Commerson Decl. ¶ 4.)  Payoneer also disclosed the email addresses

---

[1] Plaintiffs subsequently filed an amended complaint naming Ms. Chalova and Ms. Daniuk as Defendants and consolidated the cases against Fine Time Beauty and Minago into this matter.  (*See* Am. Compl.; 11/9/23 Min. Order (Dkt. # 13).)

associated with both Defendants' Payoneer accounts and two possible physical addresses for Defendants in Ukraine. (*Id.*) Plaintiffs' investigation later found that the potential physical addresses disclosed by Payoneer were either not locatable or not associated with Defendants. (*Id.* ¶ 6.) Despite conducting a thorough investigation, Plaintiffs have been unable to identify valid physical locations for Defendants. (*Id.* ¶ 7.)

On December 20, 2023, Plaintiffs sent test email messages to the email addresses associated with Ms. Chalova's and Ms. Daniuk's Payoneer accounts: andreynefedov9987@gmail.com and rivalmutapiolxgwi554@gmail.com. (*Id.* ¶ 9.) The test emails informed Defendants of the lawsuit and contained copies of the amended complaint, civil cover sheet, and summonses. (*Id.*) Plaintiffs did not receive any error notices or bounce-back messages in response to those emails. (*Id.*)

Defendants also registered email addresses when they created their Amazon selling accounts. (Haskel Decl. ¶¶ 4-5.) These email addresses are used to conduct business through the selling accounts and are the primary means of communication between Amazon and Defendants. (*Id.* ¶ 5.) On December 19, 2023, Plaintiffs sent test email messages to the email addresses associated with Defendants' Amazon selling accounts. (Commerson Decl. ¶ 8.) These test messages also informed Defendants of the lawsuit and contained copies of the amended complaint, civil cover sheet, and summonses. (*Id.*) Plaintiffs did not receive any error notices or bounce-back messages in response to the email sent to the address associated with Ms. Daniuk's selling account, xaerbjoas589@gmail.com. (*Id.*) They did, however, receive an error message in

1  response to the email sent to the address associated with Ms. Chalova's selling account,

2  hffscdcxhhvfd664@gmail.com.  (*Id.*)

3     Plaintiffs now ask the court for leave to serve Ms. Chalova using the email address

4  associated with her Payoneer account, and Ms. Daniuk using the email addresses

5  associated with her Payoneer account and Amazon selling account.  (*See generally* Mot.)

6                           **III.   ANALYSIS**

7     Federal Rule of Civil Procedure 4(h) governs service of process on foreign

8  businesses.  Fed. R. Civ. P. 4(h).  Rule 4(h)(2) authorizes service of process on a foreign

9  corporation "at a place not within any judicial district of the United States, in any manner

10  prescribed by Rule 4(f) for serving an individual, except personal delivery under

11  (f)(2)(C)(i)."  Fed. R. Civ. P. 4(h)(2).  Rules 4(f)(1) and 4(f)(2) provide specific methods

12  of serving process on individuals in foreign countries.  *See* Fed. R. Civ. P. 4(f)(1)-(2).

13  Rule 4(f)(3) allows international service by a method not listed in Rule 4(f)(1) or (2) if

14  the method is "not prohibited by international agreement, as the court orders."  Fed. R.

15  Civ. P. 4(f)(3).  As long as the method of service is "court-directed and not prohibited by

16  an international agreement, service of process ordered under Rule 4(f)(3) may be

17  accomplished in contravention of the laws of the foreign country."  *Rio Props., Inc. v. Rio*

18  *Int'l Interlink*, 284 F.3d 1007, 1014 (9th Cir. 2002).  "Service under Rule 4(f)(3) is

19  neither a 'last resort' nor 'extraordinary relief'"; rather, "[i]t is merely one means among

20  several which enables service of process on an international defendant."  *Id.* at 1015

21  (quoting *Forum Fin. Grp., LLC v. President & Fellows of Harvard Coll.*, 199 F.R.D. 22,

22  23 (D. Me. 2001)).

1    "Even if facially permitted by Rule 4(f)(3)," however, "a method of service of

2    process must also comport with constitutional notions of due process." *Rio Props.*, 284

3    F.3d at 1016. "[T]he method of service crafted by the district court must be 'reasonably

4    calculated, under all the circumstances, to apprise interested parties of the pendency of

5    the action and afford them an opportunity to present their objections.'" *Id.* at 1016-17

6    (quoting *Mullane v. Cent. Hanover Bank & Tr. Co.*, 339 U.S. 306, 314 (1950)).  Thus, the

7    court proceeds to analyze (1) whether service of process by email to Defendants in

8    Ukraine is permitted under Rule 4(f)(3) and (2) whether that method comports with due

9    process.

10   **A.      Rule 4(f)(3)**

11       First, the court concludes that service of process by email on Defendants located in

12   Ukraine is not "prohibited by international agreement" and is therefore permitted by Rule

13   4(f)(3).  Fed. R. Civ. P 4(f)(3)

14       Ukraine is a signatory to the Hague Convention on the Service Abroad of Judicial

15   and Extrajudicial Documents ("Hague Convention").  *See Contracting Parties*, Hague

16   Conference on Private International Law, https://www.hcch.net/en/instruments/

17   conventions/status-table/?cid=17 (last visited Jan. 9, 2024).  Service through a country's

18   Central Authority is the principal means of service under the Hague Convention.  *See*

19   *Rubies Costume Co. v. Yiwu Hua Hao Toys Co.*, No. C18-1530RAJ, 2019 WL 6310564,

20   at *2 (W.D. Wash. Nov. 25, 2019).  Article 10 of the Hague Convention, however,

21   "preserves the ability of parties to effect service through means other than a recipient-

22   nation's Central Authority as long as the recipient-nation has not objected to the specific

1   alternative means of service used." *Id.* (citing Hague Convention, art. 10).  Ukraine has

2   implemented the Hague Convention "in full" and does not expressly object to service by

3   email.  *See Declaration/Reservation/Notification*, HCCH,

4   https://www.hcch.net/en/instruments/conventions/status-table/notifications/

5   ?csid=426&disp=resdn (last visited Jan. 9, 2024).  Courts in the Ninth Circuit have

6   approved alternative service of process by email to defendants in Ukraine.  *See, e.g.*,

7   *Davy v. Paragon Coin, Inc.*, No. 18-cv-00671-JSW, 2020 WL 1539617, at *1-2 (N.D.

8   Cal. Feb. 5, 2020) (approving service by email on defendants in Ukraine);

9   *Williams-Sonoma Inc. v. Friendfinder Inc.*, No. C 06-06572 JSW, 2007 WL 1140639, at

10  *2 (N.D. Cal. Apr. 17, 2007) (same).  The court concludes, based on the foregoing, that

11  the Hague Convention and Rule 4(f)(3) do not prohibit service of process on Defendants

12  by email.

13  **B.    Due Process**

14      Second, the court concludes that service of process on Defendants using the email

15  addresses associated with their Amazon selling accounts and/or Payoneer accounts

16  comports with constitutional due process because it is "reasonably calculated, under all

17  the circumstances, to apprise [them] of the pendency of the action and afford them an

18  opportunity to present their objections."  *Mullane*, 339 U.S. at 314.

19      The due process requirement for alternative service by email is satisfied when the

20  plaintiff demonstrates that the email addresses at issue are valid and that service by email

21  to those addresses is likely to provide Defendants notice of the lawsuit.  *See, e.g.*, *Padded*

22  *Spaces LLC v. Weiss*, No. C21-0751JLR, 2022 WL 1423701, at *3 (W.D. Wash. May 5,

2022) (approving alternative service by email where counsel successfully sent messages to the email addresses associated with defendant's selling account and through its Amazon.com storefront); *Amazon.com, Inc. v. Dafang HaoJiafu Hotpot Store*, No. C21-0766RSM, 2021 WL 4307067, at *1 (W.D. Wash. Sept. 22, 2021) (concluding that service by email would provide sufficient notice where plaintiffs showed that defendants conducted business through the Internet); *Toyo Tire & Rubber Co. v. CIA Wheel Grp.*, No. 15-0246-DOC (DFMX), 2016 WL 1251008, at *3 (C.D. Cal. Mar. 25, 2016) (approving alternative service where plaintiff  successfully sent messages to the defendants' email addresses).  Here, Plaintiffs have demonstrated that the email addresses associated with Ms. Daniuk's Amazon selling account and both Defendants' Payoneer accounts are used in business and still valid.  (*See* Haskel Decl. ¶ 5; Commerson Decl. ¶¶ 4, 8-9.)  Therefore, the court GRANTS Plaintiffs' *ex parte* motion for alternative service by email.

## IV.    CONCLUSION

For the foregoing reasons, the court GRANTS Plaintiffs' *ex parte* motion for alternative service of process (Dkt. # 16) and AUTHORIZES Plaintiffs to effect service (1) on Ms. Chalova by email to andreynefedov9987@gmail.com; and (2) on Ms. Daniuk, by email to xaerbjoas589@gmail.com and rivalmutapiolxgwi554@gmail.com.  The court

//

//

//

//

1    further ORDERS Plaintiffs to advise the court of the status of service by no later than

2    **February 9, 2024**.

3          Dated this 9th day of January, 2024.

4

5

6          JAMES L. ROBART
           United States District Judge

7

8

9

10

11

12

13

14

15

16

17

18

19

20

21

22

ORDER - 8